UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL J. SULLIVAN, on behalf of the )
MICHAEL J. SULLIVAN IRA ACCOUNT )
and on behalf of all others similarly situated,)
)
    Plaintiffs, )
)
v. ) CASE NO.: _____
)
HOLLAND & KNIGHT LLP, and JOHN )
DOE 1 – 10, )
)
    Defendant. )
_____)

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL J. SULLIVAN, on behalf of the MICHAEL J. SULLIVAN IRA ACCOUNT ("Sullivan") and on behalf of all others similarly situated (collectively, "Plaintiffs"), file this Class Action Complaint against Defendant HOLLAND & KNIGHT LLP ("H & K" or "Holland & Knight") and other as-yet unidentified "John Doe" Defendants 1 - 10, and say:

### OVERVIEW

1. In mid-January 2009, the media first reported that a businessman named Arthur G. Nadel ("Nadel") had been running a multi-million dollar Ponzi scheme out of Sarasota, Florida. Nadel accomplished this scheme by utilizing an interrelated series of investment funds, hereinafter referred to as "the Nadel Funds." Nadel disappeared just before he was scheduled to deliver a $50 million payment to investors. He subsequently surfaced and surrendered to authorities in New York, where he remains in federal

custody as of this filing. Nadel has been charged with securities fraud and wire fraud in a federal criminal complaint filed in New York. The total losses in the Nadel Funds operated or managed by Nadel have been estimated to be approximately $350 million.

2. Holland & Knight, which is a well known, large multi-office law firm, was counsel for the Nadel Funds and various other Nadel affiliated entities through which the Nadel Ponzi scheme was executed.

3. H & K, as counsel to the Nadel Funds and Nadel's various fraudulently operated entities, prepared the private placement memoranda ("PPMs") and related offering documents furnished to the investing public. These H & K-prepared documents failed to make full, complete, and adequate disclosure regarding various material issues associated with Nadel and the Nadel Funds. Among the omitted disclosures was the fact that Nadel was a former disbarred lawyer who had been disbarred in New York for improperly taking money from clients' escrow funds.

4. The omission regarding Nadel's past was material, as were other omissions detailed in this Complaint.

5. H & K also failed to conduct a reasonable due diligence investigation into the operations of the Nadel Funds; if such investigation had been undertaken, the Ponzi scheme would have been discovered and Plaintiffs' losses avoided.

6. Attorneys like Holland & Knight, who prepare private placement memoranda and related disclosure documents, owe a duty to the investing public to use due diligence to assure that the documents prepared by them used in conjunction with the offering of investment securities fully disclose all material facts related to the

investment offering, and do not omit the disclosure of any material facts needed in order to make an informed investment decision.

7. The Michael T. Sullivan IRA Account (the "Sullivan IRA") invested and lost approximately $1,850,000 in the Victory IRA Fund, Ltd., one of the Nadel Funds for which H & K prepared the Private Placement Memorandum.

8. The PPM for the Victory IRA Fund was substantially similar to the other PPMs prepared by H & K for the other Nadel Funds, and all of the H & K prepared PPMs had common deficiencies.

9. H & K, by failing to make full, fair and adequate disclosure of all material facts in the various private placement memoranda and related documents for the Nadel Funds, failed in its duty to make adequate disclosure to the investing public, including the Sullivan IRA and plaintiff class of investors described in this suit.

## THE PARTIES, JURISDICTION AND VENUE

10. Sullivan is a resident of the State of Illinois, from which he administers the Sullivan IRA investments.

11. H & K is a Florida limited liability partnership with its principal place of business in Tampa, Florida.

12. John Doe Defendants 1 – 10 are, upon information and belief, the individual H & K lawyers involved in the preparation of PPMs and related documents for the Nadel Funds. The identity of these H & K lawyers is expected to be revealed in the course of discovery and they will be added as defendants in substitution for the John Doe Defendants. It is believed the H & K lawyers to be substituted reside in Florida.

13. The Court has "diversity jurisdiction" over this action pursuant to 28 U.S.C. §1332(a), and 28 U.S.C. §1332(d)(2)(A) also confers jurisdiction as this class action seeks in excess of $5,000,000 in damages.

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as this cause of action arose out of acts or omissions occurring within the Middle District of Florida.

## RELEVANT BACKGROUND FACTS

15. Beginning several years ago, Nadel caused to be created a number of partnerships which operated as investment funds, "the Nadel Funds." The Nadel Funds had various names such as the Victory Fund, Ltd., Viking Fund, LLC, Viking IRA, LLC, Victory IRA Fund, Ltd., Scoop Real Estate, LP and the Valhalla Investment Partners, LP, as well as perhaps others.

16. In order to promote and sell investments in the Nadel Funds to members of the investing public, Nadel retained H & K to prepare securities disclosure documents, and to otherwise act as counsel for Nadel, his various management entities, and the Nadel Funds.

17. As a result of these multi-levels of representation, a conflict of interest existed for H & K between the interests of Nadel and his various affiliated entities, and the interests of investors in the Nadel Funds.

18. As part of the undertaking of its legal representation of these various entities, H & K prepared PPMs and other related investment offering documents for the Nadel Funds for the use by the Nadel organization for the specific purpose of soliciting investors to place money with the Nadel Funds.

19. The securities laws require that persons who solicit investments from others disclose to those investors all material information about the investment and the background and experience of the principal managers of the investment; these laws also require that the disclosures do not omit from disclosure any material facts.

20. The purpose of the preparation of the PPMs and related documents by Holland & Knight was to fulfill this legal disclosure requirement.

21. The Nadel Funds were structured as open-ended investment funds, meaning that the PPM did not put a cap on the amount of money to be raised for each particular Nadel Fund, nor did the PPM place a time limit during which investor funds could be solicited.

22. The original PPMs and related documents prepared by H & K for the Nadel Funds were used for several years without change. In approximately 2006, H & K updated these various disclosure documents for the various Nadel Funds.

23. Both the original PPMs and the 2006 updates omitted and failed to disclose material facts to investors, and it is unknown whether or not the 2006 updates were actually used in selling the investments in the Nadel Funds.

24. Unless otherwise stated, the omissions and non-disclosures described in this Complaint relate to all offering PPMs and offering memoranda prepared by H & K for the various Nadel Funds.

25. The materials that H & K helped prepare for Nadel-related entities were intended for the investing public.

26. Prior to moving to Florida and establishing the Nadel Funds, Nadel worked as a lawyer in New York.

27. In 1982, Nadel was disbarred in New York. The New York Supreme Court, Appellate Division ruled that Nadel should be disbarred for misappropriating escrow funds within his control in order to pay off "loan sharks." The facts underlying Nadel's conduct and subsequent disbarment were set forth in a reported opinion, <u>In the Matter of Arthur G. Nadel</u>, 85 A.2d 8, 447 N.Y.S.2d 12 (1982).

28. The United States Supreme Court similarly disbarred Nadel from the practice of law, following Nadel's failure to show cause why he should not be disbarred from that Court. Again, Nadel's disbarment was the subject of two published opinions, <u>In the Matter of Disbarment of Arthur G. Nadel</u>, 458 U.S. 1126 (ordering Nadel to show cause why he should not be disbarred) and 459 U.S. 1082 (1982).

29. The PPMs prepared by H & K were required to disclose all material aspects of Nadel's education and professional background, including Nadel's disbarment.

30. The PPMs all contained essentially this same disclosure:

> **Arthur Nadel** is the President of the General Partner. Mr. Nadel is a graduate of New York University Law School, receiving a Juris Doctor degree from NYU. In the 1960s, he was a real estate developer and securities investor. In the 1970s, he continued these activities, while additionally serving as CEO of a public company specializing in the construction and ownership of health care facilities. In the 1980s and 1990s, he was engaged in consulting activities for various public and private companies, assisting in the preparation of business plans and budgets, and in obtaining financing. Throughout his career, Mr. Nadel has been a stock investor and trader. In 1997, Mr. Nadel together with Ms. Peg Quisenberry and others, formed a company with the purpose of studying and using computer-generated investment and trading programs and utilizing the results for portfolio management. The resulting proprietary system has been used since 1999 by other hedge funds.

6

31. Omitted from this disclosure was any mention of Nadel's disbarment for misappropriating client's trust funds.

32. The information about Nadel's past disbarment was available to H & K had they exercised reasonable care and diligence in checking into Nadel's background.

33. The information about Nadel's disbarment was material information that should have been furnished to investors, but it was omitted from disclosure in the PPMs by H & K.

34. The pre-2006 PPMs prepared by H & K, under the heading "Certified Public Accountants," stated that an individual named "Michael Zucker, CPA" had been retained as "independent accountants."

35. In fact, Mr. Zucker was not independent and was not a CPA; Mr. Zucker's CPA license had been declared "null and void" in 1989. Zucker filed for Chapter 7 bankruptcy in 1990, but continued to hold himself out to the public as a "CPA," despite the loss of his license. Zucker was sanctioned by the Florida Department of Professional Regulation ("DPR") with a "cease and desist" directive in 1999.

36. All this information about Zucker was available to H & K had they exercised reasonable care and diligence.

37. Apparently sometime after the initial round of PPMs was prepared by H & K, they discovered that Mr. Zucker was not a CPA.

38. Beginning in 2006, H & K began updating all Nadel Fund's PPMs. The 2006 PPMs contained the following disclosure regarding Mr. Zucker:

> The Partnership has retained Michael Zucker, who is neither a certified nor public accountant, to serve as the Partnership's Accountant.

39. Even though it was clear to H & K that a person improperly holding themselves out as a CPA had supposedly been the firm's "independent accountant," Holland & Knight apparently took no actions to verify that the Nadel Funds and their financial records had been maintained accurately; that there had been no defalcations or improprieties; or to otherwise verify any of the Nadel Funds' investment track records.

40. The 2006 PPMs continued to use the same disclosure as before for Mr. Nadel, a disclosure that omitted Nadel's past disbarment.

41. During the entire time of H & K's involvement as counsel for the Nadel Funds and other related entities, Nadel had been running a Ponzi scheme, and even a cursory review of the financial records of the Nadel Funds would have disclosed the existence of the Ponzi scheme.

42. Holland & Knight failed themselves to uncover this scheme, although reasonable inquiry would have done so.

43. Also, H & K failed to require that any truly independent third party accounting or financial firm review the operations of the Nadel Funds to verify that they were in fact acting properly.

44. At all material times during H & K's involvement, the Nadel Funds commingled funds and assets, and generally disregarded the formalities of the separate and distinct funds in a variety of ways. The Nadel Funds were not generating profits, but were paying investor returns from the money gathered from new investors. All of

these improprieties would have been revealed with even a superficial evaluation of the funds' financial records been conducted.

45. Even the 2006 PPMs for the Nadel Funds failed to inform investors that Zucker had lost his accounting credentials, filed for bankruptcy, and had been reprimanded by a state agency for misrepresenting his bona fides as a supposed CPA.

46. Mr. Nadel and/or his affiliated entities were acting as an investment advisor for the Nadel Funds and other investment accounts.

47. The law requires that an investment advisor be registered either federally with the SEC or in Florida with the Division of Securities.

48. Neither Mr. Nadel nor his affiliated entities were registered as an investment advisor with either the SEC or the State of Florida.

49. All of the PPMs omitted from disclosure the fact that Nadel and/or his affiliated entities were improperly acting as an unregistered investment advisor.

50. Mr. Sullivan, totally unaware of either Nadel's disbarment or Zucker's licensing and bankruptcy problems or the financial improprieties going on at the Nadel Funds, made four (4) investments in the Victory IRA Fund, Ltd. for a total of approximately $1,850,000 from the Sullivan IRA. The four (4) Sullivan IRA investments were made between 2006 and 2008.

51. In making his investments, Mr. Sullivan was given a PPM for the Victory IRA Fund dated April 1, 2003.

52. H & K failed to protect the Sullivan IRA and the class of plaintiffs described herein; H & K failed to ensure that the PPMs for the Nadel Funds contained full and accurate information, and did not omit any material information from disclosure.

53. Specifically, H & K omitted from all of its PPMs disclosure of the facts that Nadel was a disbarred lawyer because of financial improprieties; that Zucker was not really a CPA or alternatively had been misrepresenting himself as a CPA; that no review of the Nadel Funds' financial operations had been conducted by any licensed independent accountant; that insufficient profits were being generated by the Nadel Funds to pay reported returns; that Nadel and/or his companies were acting as an investment advisor without the required registration; and that the various Nadel Funds were really being operated as a Ponzi scheme.

54. H & K's acts and omissions caused significant damage to the class, including the Sullivan IRA.

55. H & K can claim no attorney-client or other privilege as a defense to this lawsuit as a matter of law; information which is intended for release to third parties, such as prospectuses, offering statements and private placement memoranda designed for and distributed to the investing public, are not subject to any such privilege, and must be accurate.

## CLASS ACTION ALLEGATIONS

56. Upon information and belief, the Nadel Funds had approximately 600 investors throughout the country, whose total losses may have reached as much as $350 million. The class is therefore so numerous that joinder of all members is impracticable.

57. The class of investors sought to be included in this case are all of those investors in any Nadel Fund for whom H & K prepared the Private Placement Memorandum and/or other Nadel Fund offering documents.

58. There are questions of law or fact common to the class. Those common questions include, but are not limited to, H & K's involvement in preparing offering materials for Nadel Funds, including any due diligence H & K performed or failed to perform in connection with those entities, and the law applicable to the actions or inactions of H & K.

59. The Sullivan IRA claims are typical of the class claims and it is anticipated that H & K will have defenses that are common to all class members.

60. Sullivan and the Sullivan IRA Account as representative parties will fairly and adequately protect the interests of the class.

61. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or H & K has acted or refused to act on grounds that apply generally to the class.

62. Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available members for fair and efficient adjudication of the controversy.

63. This case otherwise meets the requirements of Fed.R.Civ.P. 23 and Middle District Local Rule 4.04, for the reasons set forth above, and is suitable for class action treatment.

64. All other conditions precedent to the bringing of this cause of action have occurred, or been satisfied or waived.

## COUNT I
### Violation of Florida's Securities and Investor Protection Act, Chap. 517 Fla. Stat.

65. All prior allegations appearing above Count I of this Complaint are realleged and are incorporated herein by reference.

66. Holland & Knight violated the Florida Securities and Investor Protection Act by failing to disclose (and thereby omitting to disclose) material information to Nadel Fund investors.

67. As a result of Holland & Knight's omissions and violation of the Florida Securities and Investor Protection Act, the Plaintiffs and the proposed class have suffered damage.

WHEREFORE, Sullivan and the class respectfully request judgment against Holland & Knight for damages, including the return of investment funds, prejudgment interest, attorneys' fees, the costs of this action, and such other and further relief this Court deems appropriate.

## COUNT II
### Professional Negligence/Malpractice

68. All prior allegations appearing above Count I of this Complaint are realleged and are incorporated herein by reference.

69. Holland & Knight owed a duty to the investing public, including the Sullivan IRA and the class, to ensure that full and fair disclosures were made on offering documents which Holland & Knight had drafted.

70. Holland & Knight breached that duty and committed professional negligence and/or malpractice.

71. Holland & Knight's negligence proximately caused millions of dollars in damage to the Sullivan IRA and the asserted class.

72. The negligence of Holland & Knight was willful and reckless and in total disregard of the rights of the Plaintiff and the asserted plaintiff class.

WHEREFORE, Sullivan and the class respectfully request judgment against Holland & Knight for damages, including prejudgment interest, attorneys' fees, the costs of this action, and such other and further relief this Court deems just and equitable, including punitive damages as appropriate.

## COUNT III
### Negligence/Negligent Misrepresentation by Omission

73. All prior allegations appearing above Count I of this Complaint are realleged and are incorporated herein by reference.

74. Holland & Knight, as counsel for the Nadel-related investment entities, owed a duty to the investing public, including Sullivan and the class, to ensure that full and fair disclosures were made on offering documents which Holland & Knight drafted.

75. Holland & Knight breached that duty by negligently omitting from disclosure the material items enumerated in this Complaint.

76. The negligence of Holland & Knight proximately caused millions of dollars in damage to Sullivan and the class.

77. The negligence of Holland & Knight was willful and reckless and in total disregard of the rights of the Plaintiff and the asserted plaintiff class.

WHEREFORE, Sullivan and the class respectfully request judgment against Holland & Knight for damages, including prejudgment interest, attorneys' fees, the costs

of this action, and such other and further relief this Court deems just and equitable, including punitive damages as appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Guy M. Burns
Florida Bar No. 0160901
Jonathan S. Coleman
Florida Bar No. 797480
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
P.O. Box 1100
Tampa, FL  33601-1100
Telephone:  (813) 225-2500
Facsimile:  (813) 223-7118
Plaintiffs' Class Counsel

#126324 v3